IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2005

## MONTEZ ANTUAN ADAMS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-99-28     Clayburn Peeples, Judge**

**No. W2004-01013-CCA-R3-PC - Filed May 6, 2005**

On February 2, 1999, the petitioner, Montez Antuan Adams, filed a petition for post-conviction relief to challenge his 1997 Madison County Circuit Court convictions of first degree felony murder, especially aggravated burglary, conspiracy to commit especially aggravated burglary, and theft over $500, all of which were affirmed on appeal. *See State v. Montez Antuan Adams*, No. 02C01-9709-CC-00352 (Tenn. Crim. App., Jackson, Sept. 1, 1998). The post-conviction court appointed counsel, and after conducting an evidentiary hearing, it denied relief. The petitioner appealed in a timely manner. Following our review upon the record, we affirm the order denying post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

A. Russell Larson, Jackson, Tennessee, for the Appellant, Montez Antuan Adams.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Earls, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

In *Montez Antuan Adams*, this court summarized the evidence presented at the trial of the petitioner and two co-defendants:

> The State presented evidence at trial revealing an agreement
> by Montez Adams, Richardo Maxwell, Marcus Willoughby, and
> Marquel Horton  during the day of June 2, 1996, to "run up in," or
> rob, the home of victim Antonio Givens. According to Horton,
> Defendants met each other at Maxwell's residence, and Horton then

drove them to the victim's house in his mother's car. Willoughby broke down the back door of the home, and Defendants entered, each drawing a weapon. Defendants searched the house and found a nine millimeter Intertech handgun underneath Givens' mattress. Shortly after Defendants entered, Horton saw a black car approaching the house. He called a warning to the others and ran out the back door toward a wooded, brushy area behind the home.

Horton then heard two gunshots as he escaped into the back of the property; a neighbor also testified to hearing two gunshots. Defendants Adams and Willoughby caught up to Horton soon thereafter, but Maxwell had abandoned the scene and his whereabouts were unknown. Horton asked the two Defendants who fired the shots, and Willoughby replied that he had fired them both.

. . .

State witness Bernard Robinson, a friend of victim Givens, testified that he and Givens returned to the residence at nearly midnight on June 2. Robinson and the victim noticed that heat-sensitive lights on the back of the house were "blinking," that Givens' dogs were barking, and that a vehicle (later identified as registered to Marquel Horton's mother) was parked outside the house. According to Robinson, Givens drew a gun and approached the back of the house. As the victim rounded the corner from the front of the house, Robinson heard two gunshots and at least one person running through the woods. Givens ran from the back of the house toward Robinson, and Robinson carried the victim across the street to seek help from a nurse who lived nearby. Givens died in the early morning of June 3 from one gunshot wound to the chest fired from his own nine millimeter Intertech gun, a weapon which was later found by police in Defendant Maxwell's bedroom closet.

*Id.* at 5-6.

The present petition for post-conviction relief was originally heard and denied in 2001. On appeal, this court remanded "the case to the trial court for another evidentiary hearing in order for the petitioner to question his trial attorney as to why the issue of lesser included offenses was not raised on appeal of his convictions and for the entry of findings of fact and conclusions of law." *Montez Antuan Adams v. State*, No. W2001-02488-CCA-R3-PC, slip op. at 4 (Tenn. Crim. App., Jackson, Jan. 9, 2003).

On March 26, 2004, the post-conviction court conducted an evidentiary hearing on remand. The petitioner's trial counsel testified that prior to trial he met with the petitioner numerous times and discussed strategies for the defense. Counsel and the petitioner opted for a strategy of conceding that he and the co-defendants committed aggravated burglary but that the burglary had ended before Willoughby shot the victim. Essentially, the petitioner defended on the ground that the murder was not committed in the perpetration of a burglary. *See* Tenn. Code Ann. § 39-13-202(a)(2) (2003) (first degree felony murder committed by one who kills another "in the perpetration of or attempt to perpetrate any . . . burglary . . . ."). Counsel opined that the petitioner had no defense to the aggravated burglary charge.

Counsel testified that the petitioner and a co-defendant were "running away from the house into the woods . . ., and the individual who stayed behind . . . ended up shooting the victim [when] the others were gone . . . ." The defense was unsuccessful, and all co-defendants were convicted of felony murder. Counsel raised on appeal the issue of whether the burglary was a proper legal predicate for felony murder, but the appellate court rejected the claim.

Counsel testified that the trial judge believed that no lesser included offenses of felony murder should be charged to the jury, and counsel conceded that his reading of the transcript indicates that he acceded to the trial judge's determination. Counsel testified that the issue of lesser included offenses was not "in the forefront [when the case was tried in 1997] as it is now." Counsel believed at the time that second degree murder was not a lesser included offense of first degree felony murder. He believed he may have lodged a technical objection to the failure to instruct on lesser included offenses of first degree felony murder, but he did not raise the issue on appeal as "a tactical decision." Counsel explained that a lesser-included-offense issue would have been more apt had the petitioner not been taking the position that he was not responsible for the homicide at all. Counsel conceded that the defense theory was basically "all or nothing." At any rate, counsel testified that at the time of trial, he was of the opinion that no lesser included offenses applied to the felony murder charge.

Following the hearing, the post-conviction court held that counsel was not ineffective for failing to raise the lesser-included-offense issue at trial or on appeal. It concluded that counsel's actions were "consistent with both the practices of and understanding by reasonably learned people, if not extremely learned people, with regard to what the law" was at the time. The court also determined that the trial judge's instructions were proper in view of prevailing legal precedent and that, in any event, an inclusion of lesser included offenses in the jury instructions "could not have logically, materially affected the judgment of the jury."

In post-conviction proceedings, the petitioner has the burden of proving by clear and convincing evidence the claims raised. Tenn. Code Ann. § 40-30-110(f) (2003). On appeal, the lower court's findings of fact are reviewed *de novo* with a presumption of correctness that may only be overcome if the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). On appeal, the lower court's findings of fact are reviewed *de novo* with a

presumption of correctness that may only be overcome if the evidence preponderates against those findings. *Id.*

When a petitioner challenges the effective assistance of counsel, he has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel's services fall below the range of competence demanded of attorneys in criminal cases. *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994). Courts need not address both *Strickland* components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). On review, there is a strong presumption of satisfactory representation. *Barr v. State*, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995).

In evaluating counsel's performance, this court should not examine every allegedly deficient act or omission in isolation, but rather we view the performance in the context of the case as a whole. *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The primary concern of the court should be the fundamental fairness of the proceeding being challenged. *Id.* Therefore, this court should not second-guess tactical and strategic decisions of defense counsel. *Henley*, 960 S.W.2d at 579. Instead, this court must reconstruct the circumstances of counsel's challenged conduct and evaluate the conduct from counsel's perspective at the time. *Id.*; *see also Irick v. State*, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998). A court must

> "consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated trivial effect . . . ."

*Henle*y, 960 S.W.2d at 580 (quoting *Strickland*, 466 U.S. at 696-97, 104 S. Ct. at 2069).

In this appeal, the petitioner claims that because our supreme court has ruled that second degree murder, reckless homicide, and criminally negligent homicide are lesser included offenses of first degree felony murder, *see State v. Ely*, 48 S.W.3d 710 (Tenn. 2001), his counsel was ineffective in failing to request instructions on these lesser included offenses and in failing to raise the issue on direct appeal. We disagree.

In determining that second degree murder, reckless homicide, and criminally negligent homicide were lesser included offenses of felony murder, the *Ely* court was applying the regime for determining lesser included offenses announced in *State v. Burns*, 6 S.W.3d 453, 467 (Tenn. 1999). *Burns* was given retroactive effect to cases that were in the appellate pipeline when

*Burns* was decided on November 18, 1999. *See State v. Stokes*, 24 S.W.3d 303, 305 (Tenn. 2000). The petitioner's direct appeal had been concluded prior to the filing of *Burns*. At the time of the petitioner's trial and appeal, Tennessee law did not recognize second degree murder, at least, as a lesser included offense of felony murder. *See State v. Gilliam*, 901 S.W.2d 385, 390-91 (Tenn. Crim. App. 1995). In a situation similar to the petitioner's, this court has held that trial counsel was not ineffective in not requesting an instruction on second degree murder as a lesser included offense of felony murder. *William Glenn Wiley v. State*, No. M2003-00661-CCA-R3-PC, slip op. at 8 (Tenn. Crim. App., Nashville, Sept. 23, 2004) (holding trial counsel did not perform deficiently when "at the time of trial, . . . second degree murder was not a lesser-included offense of 'reckless' felony murder" per *Gilliam*). In consequence, trial counsel in the present case did not perform deficiently when he failed to request an instruction on second degree murder or when he failed to raise this issue on direct appeal.

*William Glenn Wiley* does not address, however, the petitioner's complaint that trial counsel did not seek jury instructions on reckless and criminally negligent homicide. To analyze this part of the petitioner's claim, we focus primarily upon the prejudice prong of *Strickland* and evaluate whether the failure to charge these two lesser included offenses would have produced a different verdict and whether, if a failure to so instruct the jury had been raised on appeal, the appellate court would have ordered a new trial. As we explain below, we hold that the petitioner has failed to establish prejudice as a result of his counsel not presenting the issue to the trial and appellate courts.

On the issue whether the jury's verdict would have been different had reckless and criminally negligent homicide been charged, we first note that the 1996 felony murder was proscribed by the current provision in Tennessee Code Annotated section 39-13-202(b), which says the "[n]o culpable mental state is required for conviction [of felony murder] except for the intent to commit [the predicate felonies]." Tenn. Code Ann. § 39-13-202(b) (2003). This legal factor in combination with the petitioner's trial strategy that he was not responsible for the homicide because the burglary for which *he was responsible* had been concluded prior to the shooting leads us to the inescapable conclusion that the jury would have found the petitioner guilty of either felony murder or not guilty of any homicide. There was no attempt to ascribe to the petitioner a culpable mental state for homicide other than the *mens rea* for burglary; not even negligence was argued as a basis for a homicide conviction. The petitioner failed to establish any basis for speculating that the jury's verdict would have been different had reckless and criminally negligent homicide been charged.

Furthermore, as a consequence of the defense strategy, we see no reasonable possibility that the direct appeal would have resulted in a new trial had the lesser-included-offense issue been raised. At the time of the appeal, it was of course well recognized that a trial court had the duty of giving a correct and complete charge of the law applicable to the facts of the case. *See e.g.*, *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990); *State v. Bryant*, 654 S.W.2d 389, 390 (Tenn. 1983). The legislature had promulgated that the trial court must charge the jury on applicable lesser included offenses whether or not they are requested by the defendant. *See* Tenn. Code Ann. § 40-118-110(a) (1997). Our courts were holding at the time, however, that lesser included offenses need not be charged when the evidence supported only the greater offense or no offense at all. *See*

*Moorman v. State*, 577 S.W.2d 473, 475 (Tenn. 1978); *State v. Tutton*, 875 S.W.2d 295, 297 (Tenn. 1993). Such would have been the situation had the petitioner's attorney raised the lesser-included-offense issue on direct appeal. The evidence either supported a conviction of felony murder based upon the predicate offense of burglary or mandated an acquittal of homicide based upon the burglary not qualifying as a predicate offense. In our view, this court in 1998 would have rejected an appellate claim that the trial court should have instructed the jury as to reckless and criminally negligent homicide. In this situation, the petitioner in this post-conviction proceeding has failed to establish that he was prejudiced by counsel's failure to complain on appeal that the trial court erred in omitting jury instructions on reckless and criminally negligent homicide.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE